**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 09-cr-30075 |
| | ) | |
| **DAVID ALAN MONFRE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

**REAGAN, District Judge:**

  I.   **Issue before the Court and the Court's Ruling Thereon**

As to the decision to permit Defendant David Allen Monfre to remain on pretrial release pending trial in the above-captioned case, the undersigned District Judge **DENIES** the United States's Motion to Revoke Magistrate's Order Granting Pretrial Release (Doc. 7), **AFFIRMS** Magistrate Judge Donald G. Wilkerson's decision and **ADOPTS** all terms imposed by Judge Wilkerson as conditions of Defendant's release, with the understanding that the electronic monitoring shall be with GPS technology and will include exclusion zones[1] known only to the Court and to probation. Additional conditions of release will be imposed to "reasonably assure" that Defendant is not a danger to the community.

  II.  **Procedural History of the Case**

On June 17, 2009, a grand jury sitting in the Southern District of Illinois indicted

---

[1] An exclusion zone, for purposes of this order is a geographical area which, if physically entered by Defendant, will cause an alarm to be sent to the probation officer assigned to the location monitoring in this case.

1

Defendant Monfre, with receipt of child pornography, as defined in 18 U.S.C. § 2256(8), in violation of 18 U.S.C. § 2252(a)(2) (Counts 1 & 2); transportation of child pornography, as defined in 18 U.S.C. § 2256(2)(A), in violation of 18 U.S.C. § 2252(a)(1) & (b)(1) (Count 3); and criminal forfeiture under 18 U.S.C. § 2253 (Count 4). The United States moved to detain Defendant (Doc. 5), but, on June 26, 2009, Judge Wilkerson denied the motion and released Defendant with conditions (Doc. 12).

On June 26, 2009, United States moved to revoke the magistrate judge's order granting pretrial release (Doc. 7) and, on June 29, 2009, moved to stay execution of the release order pending review by the District Court (Doc. 13). After having reviewed the transcript of proceedings before Judge Wilkerson, the undersigned Judge granted the motion to stay execution of release pending a *de novo* review of Judge Wilkerson's determination with respect to detention (Doc. 20).

Defendant took issue with the order staying his release and filed a notice of appeal with the Seventh Circuit Court of Appeals on July 2, 2009 (Doc. 27). This appeal was dismissed for lack of jurisdiction by the Court of Appeals (Doc. 37). On the following day, the undersigned Judge held a detention hearing under **18 U.S.C. § 3142(f) of the Bail Reform Act**.

The United States and the defense proceeded by way of proffer, with the United States offering exhibits one through seven. The Court heard arguments from both sides. The Court's affirmance of Judge Wilkerson's order is based upon the proffers, information contained in the indictment and the pretrial services report, and exhibits offered and admitted over objection and the arguments of counsel.

### III. Analysis

The parties agree that Defendant is not a flight risk; consequently, there is no issue

as to whether or not he will appear as required. The Court is called upon to determine whether, by clear and convincing evidence, there is any condition or combination of conditions that would reasonably assure the safety of any other person and the community if Defendant is released on bond. If not, he is to remain detained pending trial.

In a thorough and well-reasoned order, Judge Wilkerson concluded that a combination of conditions exists that will likely assure the safety of any person or the community (Doc. 20). After so concluding, Judge Wilkerson imposed electronic monitoring and permitted Defendant to go only to work, church or to doctor's appointments. All of the trips would require prior approval from the pretrial services officer assigned to this case. Defendant was forbidden to use the Internet and was required to surrender his passport. While this Court is undertaking a de novo review, and, therefore, giving no deference to Judge Wilkerson's Order, it is interesting to note that, prior Judge Wilkerson's becoming a magistrate judge, he was an Assistant United States Attorney exclusively prosecuting offenses such as that with which Defendant is charged.

At the outset, it should be noted that Defendant is charged with a crime of violence, which gives rise to a rebuttable presumption, under 18 U.S.C. § 3142(e), that "no condition or combination of conditions will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." **18 U.S.C. § 3142(e)**. Additionally, he is subject to a separate rebuttable presumption under 18 U.S.C. § 3142(e)(3)(E) since the offense involves minor victims under §§ 2252(a)(2) (Counts 1 and 2) and 2252(a)(1) and (b)(1) (Count 3).

A. **The Nature and Circumstances of the Offense Charged**

Counts 1 and 2 charge Defendant with receipt of child pornography, as defined in 18 U.S.C. § 2256(8), in violation of 18 U.S.C. § 2252(a)(2). Each count carries a potential penalty of

3

5 to 20 years' imprisonment, a $250,000.00 fine, or both, and a supervised release term of 5 years to life. Count 3 charges Defendant with transportation of child pornography, as defined in 18 U.S.C. § 2256(2)(A), in violation of 18 U.S.C. § 2252(a)(1) & (b)(1), which carries a potential penalty of 5 to 20 years' imprisonment, a $250,000.00 fine, or both, and a supervised release term of 5 years to life. Count 4 requests forfeiture of his computer pursuant to 18 U.S.C. § 2253.

These are very serious crimes, and this case carries, according to the United States, a sentencing guidelines advisory range of 210 to 262 months because of the number of images and other potential enhancements such as the age of the victims, distribution for value and sadomasochistic behavior.

### B. **The Weight of the Evidence Against Defendant**

The Court has reviewed the United States's exhibits 1 through 6, which are described as "chats" between "local user," whom the United States contends is Defendant, and various other online individuals. To describe them as lurid and sordid would be an understatement. Additionally, the United States has tendered, for *in camera* review, Exhibit 7 which contains 13 pages of photographs and cartoons that it claims were retrieved as result of a forensic analysis of Defendant's computer. Some of the photographs depict real human beings while others are cartoons. A few of the actual photographs do not meet the criteria of child pornography as that term is defined in 18 U.S.C. § 2256(8) because the Court cannot determine the approximate age of the individual or because they are not pornographic depictions. One photograph, for example, depicts a male whose age cannot be determined, who is shown sticking his tongue out while licking over his own shoulder. That photograph does not meet the definition of child pornography. However, there are multiple other photographs of both individuals and groups of individuals which meet the definition of child

4

pornography.

Without conducting a detailed and exhaustive review of the photos, the Court concludes that there are less than 25 images in exhibit 7 that meet the definition of child pornography, excluding duplicates in this count. The Court believes that the United States has met its threshold burden, at this early stage of litigation with the Rules of Evidence that are applicable, of showing that the photographs and "chats" came from Defendant's computer and that he "received" and/or "transported" them.

Some of the language in the "chats" gave the Court great pause because they seem to indicate - at the time they were engaged in - a present intention to commit a future offense: child molestation. However, two of those chats are internally inconsistent in that, at one point in time, Defendant alleges that he had molested nine- or ten-year-old child (Exh. 4), while later claiming the child was eleven years old (Exh. 3). Additionally, the acts described differ. Finally, the United States confirmed at the hearing that, in spite of its efforts, it has been unable to find any victims who were molested by this particular Defendant. This may, as Judge Wilkerson suggested in his July 1 Order, basically be a case of a defendant "puffing" through the anonymity afforded by the Internet. In any event, the most recent "chats" in which Defendant expressed a desire to commit such acts occurred in 2007.

It bears repeating that Defendant is presumed innocent of the charges against him. However, under 18 U.S.C. § 3142(g)(2), the Court is required to assess the weight of the evidence against Defendant to determine whether or not he should be detained. Under § 3142(j), the presumption of innocence is reiterated as part of the Bail Reform Act.

    C.    **The History and Characteristics of Defendant**

The factors relevant to the history and characteristics of Defendant weigh heavily in favor of release. Defendant is 29 years old and, with the exception of residing briefly in the State of Georgia and the City of St. Louis, has maintained lifelong residency in southern Illinois. His father resides in O'Fallon, Illinois, and his mother in Mascoutah, Illinois. He has two siblings, both of whom reside in southern Illinois. Defendant has not been married and has no children. Law enforcement records indicate that he is not wanted by any agency. He has maintained steady employment for the past eight years as a dispatcher with the Illinois American Water Company, making $23 per hour on a full-time basis. Although Defendant has significant credit card debt, he has a retirement savings account that almost offsets it. Additionally, he has a checking account and a savings account. He owns his home, which was recently refinanced, and, according to his counsel, he has limited if any equity in it. Defendant has roots in the community; he has no criminal history; and he has a very supportive family, which has attended all of his court appearances. He has no mental condition that would affect whether he would appear. Also, Defendant has, for the past 14 months, been attending Sexual Compulsives Anonymous support group meetings. The United States agrees that he is not a flight risk. Defendant has no history of drug or alcohol abuse. He has no significant criminal arrest record and no prior record of failing to appear at court proceedings. At the time of Defendant's arrest, he was not on probation or parole. He is not an illegal alien subject to deportation. Defendant's immediate supervisor has expressed a desire that he return to work expeditiously. His Internet service at home has been disconnected, and a telephone line has been installed for the electronic monitoring connection. The probation department has recommended

release with conditions.[2]  Magistrate Judge Wilkerson ordered release with conditions.

### D. Less Restrictive Means

The United States does not believe electronic monitoring will alleviate the potential risk to the community that it believes Defendant poses. The United States suggests that electronic monitoring is best suited to cases where there is a flight risk. While this argument is not lost on the Court, the fact is that anyone on electronic monitoring who wants to flee can easily do so. The individual simply takes off the cuff bracelet and is gone. Although probation might be immediately notified that the individual has gone beyond a certain distance from the monitoring box or that the bracelet has been cut, the fact is that the defendant has absconded. The United States is also concerned that Defendant lives near a skating rink and a high school. The Court is aware of this particular area and also notes that there is a grade school within a mile.

The Court believes these concerns can be allayed with electronic monitoring and stringent curfews. A GPS-based monitoring system will tell the Court where Defendant is at all times. The Court will also, in conjunction with probation, build "exclusion" areas whereby probation will be immediately notified if Defendant is within one of these areas. These geographical areas - which will remain confidential between the Court and probation - will include, for example, the Funspot skating area, which is frequented by children and youths. Defendant will be limited to his home unless he is in route to work or at work. Probation will monitor the course he travels to and from work. If he strays, probation will be notified and so will the Court. If Defendant enters an

---

[2]Probation's recommendation is considered under history and characteristics of Defendant and not under the weight of the evidence because it is typically not privy to the details of the offense when it makes its recommendation as to detention. Permission to attend church, medical appointments, legal meetings and to purchase necessities must be approved in advance by probation.

7

exclusion zone, probation will be notified and so will the Court. If he leaves his home at a time other than that approved by probation, it will be notified and so will the Court. In essence, he will be imprisoned in his own home where he will not be able to access the Internet, and will be subject to random and unannounced searches.

### IV.   Conclusion and Conditions of Release

Defendant has successfully rebutted the statutory presumption of dangerousness for crimes of violence contained in § 3142(e) and for offenses involving minors in § 3142(e)(3)(E). While troubling, the aged "chats" do not rise to the level of clear and convincing evidence of Defendant's future dangerousness. The Court cannot find, by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community if Defendant is released. Consequently, he is released on the following combination of conditions:

(1)   Defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)   Defendant shall advise the U. S. Pretrial Services Agency in writing of any change in address and telephone number

(3)   Defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed.

(4)   Defendant shall execute an unsecured bond binding Defendant to pay the United States the sum of **TWENTY-FIVE THOUSAND DOLLARS AND NO/100 ($25,000.00)** in the event of a failure to appear as required or violation of any of the other conditions set forth in this order, or to surrender as directed for service of any sentence imposed.

(5)     Defendant shall maintain or actively seek employment.

(6)     Defendant shall report to the U. S. Probation Office as directed.

(7)     Defendant shall not possess any firearm, weapons, destructive device or other dangerous weapon.

(8)     Defendant must surrender his passport to U. S. Probation and not obtain a passport.

(9)     Defendant shall report as soon as possible to the Pretrial Service Office any contact with law enforcement personnel including, but not limited to, any arrest, questioning or traffic stop.

(10)    Defendant shall be placed on electronic monitoring with GPS technology and is permitted to leave his home only to go to work. He must obtain the specific permission of the probation officer in charge of his monitoring in order to go to church, doctor's appointments, legal meetings and grocery shopping. All such trips must be approved in advance so that the probation officer can "map" the trip without causing alarm.

(11)    Defendant shall pay the cost of electronic monitoring.

(12)    Defendant is forbidden to use the Internet and to access it in any way with any device during the pendency of these proceedings.

(13)    Defendant shall not buy, sell, exchange, possess, trade or produce visual depictions of minors or adults engaging in sexually-explicit conduct. Defendant shall not correspond or communicate in person, by mail, telephone (cellular and landline), or computer, with individuals or companies in order to buy, sell, trade, exchange or produce visual depictions of minors or adults engaged in sexually- explicit conduct.

(14)    The Court understands that Defendant, while at work, has access to a computer that is restricted from accessing nonwork-related websites. If that restriction should ever change, Defendant

must immediately notify probation.

(15)    Defendant shall permit the probation officer in charge of his monitoring to have access to any personal computer and/or electronic device capable of accessing the Internet, World Wide Web, and electronic mail.  Defendant shall also allow the probation officer or designee to conduct regular searches of his home. Any computer on the premises will be subject to search using software monitoring devices if determined necessary by probation.  The Court orders that there be no computer in the home while Defendant is present.  Defendant shall not use any computers other than those supplied by his employer. Defendant shall submit his person, residence, real property, and vehicle to search conducted by the United States probation office at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of this Order. Failure to submit to such a search will be grounds for revocation in and of itself.  Defendant must inform any other resident of the premises that the residence is subject to search.  Defendant shall submit to search at any time - with or without a warrant, by law enforcement or probation - of Defendant's person and property, residence, vehicle, papers, computer or other electronic communication or data storage devices or media and effects.

(16)    Defendant shall have no personal, mail, telephone or computer contact with children or minors under the age of 18, with the alleged victim of the offense or with potential witnesses. Defendant shall not be employed in a job requiring personal contact with children or minors under the age of 18.  Defendant shall not be involved in any children or youth organizations.  No children or minors under the age of 18 shall visit Defendant's residence.

The Court acknowledges that these restrictions are burdensome, even onerous. Defendant will, in many respects, be a prisoner in his own home. They are in the Court's view,

however, necessary in order to "reasonably assure" the safety of the community, while bearing in mind that Defendant is presumed innocent of the charges against him.

**IT IS SO ORDERED.**

**DATED this 10th day of July, 2009**

<u>**s/Michael J. Reagan**</u>
**MICHAEL J. REAGAN**
**United States District Judge**
