IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. 3:09CR30075 SPM |
| | ) |
| DAVID ALAN MONFRE, | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
PURSUANT TO 18 U.S.C. §3583(e)(1) AND MEMORANDUM IN SUPPORT**

COMES NOW defendant DAVID ALAN MONFRE, by and through counsel, and hereby respectfully moves this Honorable Court pursuant to 18 U.S.C. §3583(e)(1) for an order terminating his term of supervised release. Neither his supervising probation officers nor the United States Attorney's Office opposes this motion. Mr. Monfre was released from the Bureau of Prisons in June of 2017 and was released to begin serving his supervised release term in September of 2017. He has, therefore, served approximately six years of his lifetime supervised release, exceeding the one-year minimum statutorily required for this type of motion. Both his post-conviction conduct and the interest of justice support early termination. In further support of his motion, Mr. Monfre states as follows.

**RELEVANT FACTS AND BACKGROUND**

1. David Alan Monfre is a 44-year-old man. He currently lives in the Southern District of Illinois in a single-family home in Carbondale, Illinois, which he purchased in approximately 2020. David currently lives there with his partner of five years, Jerod Johnson.

2. On May 7, 2010, David pleaded guilty to all three counts of the indictment

pending against him, without a plea agreement. The court permitted him to remain on bond.

3. On September 8, 2010, the court sentenced David to a term of ninety-six (96) months in the Bureau of Prisons, representing a downward departure from the low end of his recommended sentencing guidelines range of 151 to 188 months. In addition, the court sentenced David to serve a lifetime term of supervised release. Over the government's vigorous objection, the court permitted David to remain on bond and to voluntarily surrender to the Bureau of Prisons ("BOP"), noting:

> When I first saw you, I let you out. I wasn't supposed to. And later on I made that decision. I wasn't supposed to. You came to Court today looking at a guideline range of 151 months but you still showed up, so if you were going to run I think you would have run by now. I have given you less than that. I probably shouldn't let you self report, but I am going to. Don't abuse my trust, okay? Because if you do, I'll become your worst nightmare. That is one promise. But secondly, every time I think I have told you, each time I let you out and trusted you, the Bureau of Prisons looks at that. Now if they see I let you self report, they'll look at it and they are more likely to follow my recommendations of a camp and a local camp. If you violate or do something like that where I have you picked up and all of a sudden it's 96 months and you go to a place with razor wire. That is not a nice place to go, especially with the history of the offense that you have. I am confident that you are not going to create any problems.

Sentencing Transcript (SE Tr.) 122-23. David successfully completed his bond supervision, self-surrendered where and when he was ordered to do so, and proved himself worthy of the sentencing court's confidence.

4. David has never been out of compliance with his supervisory conditions, either while on bond presentence, nor since his return to the community in June of 2017. He quickly and successfully completed the requisite sex offender treatment. His counselor, Pamela Smith, related to the undersigned that David "was a great client and worked very hard in treatment," and that David "could not have done a better job with treatment." She requested David mentor others

enroled in that treatment who were experiencing difficulty.  David readily accepted that responsibility and continued mentoring until COVID-19 lock down caused in-person meetings to be suspended.

5.     Since returning to the community, David has been steadily employed.  Upon his initial release, and while still in the half-way house, he worked two jobs, as a gas station clerk at Motomart, and in the Subway sandwich shop in the Pilot Travel Center in Marion, Illinois.  Within two years, David was promoted at Subway to a lead position, in which he was earning sufficient money to allow him to leave the Motomart job.  In 2021, Pilot promoted him to a Service Leader I position at Subway, meaning that David manages that sandwich shop.  At this time, David is earning nearly $21.00 per hour at Pilot, working at their Subway shop, as well as medical benefits, and a participation in a 401k plan.  He is in a management position; he still makes sandwiches, but he is also in charge of scheduling other employees, handling time sheets, and ordering whatever supplies are needed.

6.     David was initially supervised by United States Probation Officer Kevin Raymond and is now supervised by Samantha Reeves.  The undersigned has contacted the probation office, and discussed her intention to file this motion with PO Samantha Reeves.

7.     David has satisfied any and all financial elements of his sentence, having paid in full the $300.00 special assessment the day he was sentenced, and paying the full $1,500.00 fine within the first year in the Bureau of Prisons.

8.     While he was in the Bureau of Prisons, David worked consistently at two jobs: (1) in "facilities," where he was a clerk for the plumbing department in the shop, filling out all the pay sheets, and earning $.20 per hour; and (2) in "recreation," where he was the pickleball

"commissioner," running the pickleball league, and earning $.40 per hour.  He also obtained a paralegal certificate through Blackstone College.

        9.      During the entire period of David's Bureau of Prisons sentence, he was administered random urinalyses, none of which was positive.  During the entire period of his supervised release he has never tested positive for any controlled substance.

        10.      The undersigned has contacted Assistant United States Attorney William Coonan, and has shared all of the above information with him, including her intention to file this motion.

### MEMORANDUM IN SUPPORT

Pursuant to 18 U.S.C. Sec. 3583(e)(1), a court may,

> after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)©, (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) ... terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice....

18 U.S.C. Sec. 3583(e)(1).  FED. R. CRIM. P. 32.1 – Revocation or Modification of Probation or Supervised Release – provides, in turn:

> (b)     MODIFICATION OF PROBATION OR SUPERVISED RELEASE.
>
> A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected.  An extension of the term of probation or supervised release is not favorable to the person for the purposes of this rule.

FED. R. CRIM. P. 32.1(b).  Mr. Monfre has served more than one year of his supervised release

term. Therefore, this Court has the authority, after considering the appropriate sentencing factors, to terminate Mr. Monfre's supervised release and to discharge him, if "such action is warranted by the conduct of the defendant ... and the interests of justice." In Mr. Monfre's case, all of the sentencing considerations suggest early termination would be appropriate. Mr. Monfre's conduct, from the beginning of his case through the present date, supports early termination of his supervision. The interests of justice would be served by the Court's granting this motion.

The relief sought in this motion, if granted, would certainly be favorable to David Monfre. Nevertheless, Mr. Monfre will gladly present himself for a hearing, should the Court want to have Mr. Monfre present in court and available to answer any questions the court may have. It may be helpful to draw the Court's attention to the words of David's sentencing judge, with respect to that court's imposition of a lifetime period of supervision:

> I know you have to stay on [supervised release] at least a year. But I would welcome you to meet with your lawyer when you think you have reached the point that you no longer need supervised release or you can convince me that you don't and I will gladly relieve you of that. The reason I choose lifetime supervised release in this kind of case is because, quite frankly, social sciences still don't know enough about this particular offense and I want to make certain that we have some kind of contact and control over you. I know there is a minimum of one year and after that if counsel believes that she can make an argument to the Court that you ought to be left off early, I would be happy to entertain that.

SE Tr. p. 116. The sentencing court further indicated:

> With respect to the 3553(a) factors and Mr. Monfre, I don't think he is likely to reoffend. I think that the deterrence in this case has to be societal deterrence. It has to deter others. I think he has gotten the message. I have seen him in Court many times. He has an extraordinary support system who appeared with him in Court every time. There is a thing we all know about called mother's intuition. That is the third eye the mother has in the back of her head and she knows when a child is doing something or about to do something wrong. It has

>no basis in science. We all know it exists. I think there is a thing called judicial intuition. It is rare, but I think in this case – I don't think we're going to see Mr. Monfre again. It doesn't mean he is not entitled to, nor is he not going to get a stiff punishment, but I don't think based upon the testimony from Dr. Rosen and what I know about him, his background, Mr. Monfre's, I don't think we will see him again with respect to any offense in general, child pornography in specific. Certainly, I don't expect anything with respect to a contact offense.

SE Tr. pp. 112-13. Once again, David has proven himself worthy of the sentencing court's confidence. He has never had any type of trouble with the law; he has done his best to give back to his community, both in custody and out; he has remained in compliance with any and all conditions of supervision.

## CONCLUSION

For all of the foregoing reasons, David Monfre respectfully moves the Court to enter its order terminating his term of supervised release.

Respectfully submitted,

LAW & SCHRIENER, LLC

By: *Carter Collins Law*
CARTER COLLINS LAW 111108
Attorney for defendant David Alan Monfre
231 South Bemiston Avenue, Suite 800
Clayton, Missouri 63105
(314) 721-7095 – telephone
(314) 854-1394 – facsimile
(314) 707-7095 – mobile
ccledmo@schrienerlaw.com – e-mail

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. §3583(e)(1) and Memorandum in Support to be served by operation of the Court's electronic filing system upon Assistant United States Attorney William E. Coonan, this 29th day of November, 2023.

*Carter Collins Law*
CARTER COLLINS LAW

-7-